Casey, Ch. J.,
delivered the opinion of the court:
After the occupation of Memphis by the Union army,' and about the 13th February, 1803, a block of eighf stores in that city, six of which belonged to the claimant, and two to a lady of the name of Talbot, were taken possession of by the military, and occupied and used as a hospital. They were held under this military seizure and occupancy .until about the 1st- February, 1864, when Captain Eddy, the depot quartermaster, entered into a verbal contract with the owners to pay them the sum of $125 per month as rent for each store. From this time they were borne upon his monthly abstracts and returns to the Quartermaster General, and the stipulated rent was paid by him, and returns thereof duly made in his accounts current up to October 1,1864. Captain Eddy was then relieved, and Colonel Robert E. Clary succeeded him as post quartermaster at Memphis. He reported the claimants’ stores at the same rent up to March 1, 1865, and from that at $250 per month, until the 22d May, 1865, when they were surrendered, and possession delivered up to the owner.
About the latter end of October,-or first of November, 1864, the attention of Colonel Clary was called to the inadequacy of the rent being paid for these stores by Mrs. Talbot, the owner of two of the eight in the block, with a request that the rent should be increased. Colonel Clary, upon inquiry, determined that the rent being paid by the United States for these stores was mueh below what they could be rented for to private indi- *459 victuals, determined to increase tbe rent to $250 per month for each store; and he directed his clerk to so return them at the increased rent. By a mistake or omission of the clerk, only Mrs. Talbot’s two stores were returned at the increased rent, from November 1,1864, while the claimants’ were borne upon the returns at the former rate of $125 per month. Thesereturns were so continued up to March 1, 1865, when Colonel Clary’s attention was called to the matter by the claimant, when he caused the proper return to be made and paid him at the rate of $250 for each store until their surrender on the 22d May, 1865.
These matters were represented to Colonel Clary by the claimant in December, 1865, and Colonel Clary reported them to the Quartermaster General, as follows:
“Deputy QuabtebMASteb Genebal’s Oeeice,
“Memphis, December 28, 1865.
“The statement within is correct, and it was by an error in omission of my clerk, in not reporting the buildings in question at an increased price, corresponding with that paid for all others of a similar character, that Mr. Provine received $725 per month from his buildings from November 1,1864, to March 1,1865. This gentleman is jn justice entitled to the increased rent for the period stated, and it is respectfully referred to the Quartermaster General for his approval.
“The payment of rent on buildings seized for public purposes on the capture of Memphis was originally determined upon and ordered by the military commander of the district, upon proof of the loyalty of the owners.
“I should not consider it expedient to go beyond this period, or to entertain claims of a prior date.
“The papers in the case are returned.
“Yery respectfully, your obedient servant,
“R. E. CLARY,
“Assistant Quartermaster General.”
The claim for the additional rent was rejected by the War Department.
The claimant also seeks to recover the sum of $4,485 for repairs and alterations required to put the buildings in the same condition in which they were when the United States *460 entered into their occupancy.* This claim was also rejected. It is to recover these two sums that the claimant prosecutes this suit.
The claimant proves that he has always borne true allegiance to the United States, and has never given any aid, countenance, or encouragement to rebellion against the same.
And upon the facts so found, the court rule as matter of law—
1. That the property was held under a contract and not by virtue of an appropriation by the army, and that this court has jurisdiction of the subject-matter of the claim.
2. That upon the contract made with the quartermaster, the claimant is entitled to recover the balance of the rent of $125 per month for each store, from the 1st November, 1864, until March 1,1865, amounting to the sum of $3,000.
3. That upon the facts stated, the claimant would be entitled to recover the same amount on an implied contract for use and occupation, if no amount was expressly agreed upon, that being the fair value or rent of the premises.
4. That upon- the facts stated, the claimant is entitled to be repaid the sum necessarily expended by him in putting the premises in the same condition and repair as when the United States took possession of the same. a
5. That upon all the facts stated, the claimant is entitled to judgment for the sum of $7,485. And for this sum judgment is rendered in his favor.

 The alterations made in tlie Tmildings, whinli rendered these repairs and restorations necessary, were made by the agents and officers of the United States, while the premises were held under the airpropriation or seizure, and before any contract existed for the rent of the premises.